UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                    :

MIRKA UNITED, INC.,                      :

                      Plaintiff,      :

                                  :           06 Civ. 14292 (GEL)

                        v.           :

                                  :           **OPINION AND ORDER**

ANDREW CUOMO,                    :

                      Defendant.     :

                                  :
-------------------------------------------------------------x

Roger L. Stavis, David T. Azrin, Gallet, Dreyer
& Berkey, LLP, New York, NY, for plaintiff.

Lee Alan Adlerstein, Steven N. Schulman, Assistant
Attorneys General, Andrew Cuomo, Attorney
General, New York, NY, for defendant.


GERARD E. LYNCH, District Judge:

In this action, filed pursuant to Section 1983 of Title 42 of the United States Code, Mirka

United, Inc. ("Mirka") seeks a declaration that certain seizures by New York's Office of the

Attorney General ("OAG") made during the course of a grand jury investigation pursuant to

search warrants executed by a New York Supreme Court Justice were unconstitutional.  The

dispute comes before the Court on a motion to dismiss and a cross-motion for summary

judgment, and the central issue is whether the principles underlying Younger v. Harris, 401 U.S.

37 (1971), require this Court to abstain from deciding the merits of Mirka's federal lawsuit in

light of ongoing state criminal proceedings.  Both the principles of Younger and general

equitable considerations counsel abstention.

**BACKGROUND**

Mirka is a New York corporation that assists in management, billing, and collections for medical professionals. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss and in Support of Its Cross Motion for Summary Judgment ("P. Opp.") 1.) Jacob Kagan is the president and sole shareholder of Mirka. (Affidavit of Jacob Kagan, dated December 6, 2006, ¶ 1.) During an investigation regarding insurance fraud and pursuant to search warrants executed by Supreme Court Justice Deborah A. Dowling on November 21, 2006 (Complaint, Exs. 1-2), OAG searched Mirka's offices and seized various records relating to Mirka's business organization, the provision of medical and legal services, and certain funds transfers. One hundred and seventy four boxes of materials were seized. (Declaration of Edward Ferrity, dated December 15, 2006 ("First Ferrity Declaration"), ¶ 11.)

At the time the search warrant was executed and as part of the investigation, the Attorney General also served several grand jury subpoenas on other parties. (Affirmation of Robert Stavis, dated December 8, 2006, ¶ 5.) OAG did not attempt to obtain the Mirka documents by grand jury subpoena, however, because of its fear that the records would not have been produced if "[Jacob] Kagan and his associates had time to organize a production pursuant to subpoena." (Defendant's Memorandum of Law in Opposition to Motion for Preliminary Injunction ("D. Opp."), 4; see also First Ferrity Declaration, ¶ 9.) On December 5, 2006, the search warrant was returned to the issuing court with an inventory of the seized materials. (First Ferrity Declaration, ¶ 5.) According to the OAG, the records seized demonstrate the "pervasively criminal nature of Kagan's businesses." (Id. at ¶ 9.)

On December 8, 2006, Mirka initiated this suit against the Attorney General seeking both a declaration that the warrants under which the records were seized were overbroad and not supported by probable cause, and an injunction directing him to return the seized records. (Complaint, Prayer for Relief.)  The Court conferred with the parties on December 21, 2006, January 4, 2007, and April 20, 2007.  At these conferences, the parties discussed a practical resolution of the dispute.  Mirka represented that the relief it principally sought was access to the records seized during the course of the investigation, the seizure of which purportedly interfered with Mirka's on-going conduct of business.  See, e.g., 12/21/06 Tr. 4 (Mr. Stavis [Counsel for Mirka]:  "If . . . I could have my hard drive copy and copies of my business records, your Honor, I'll fold my tent and go home."); id. at 14 (The Court:  "Okay, so, Mr. Stavis, what is it that you're asking me to direct at this point?" . . . Mr. Stavis:  "I would like access to all 172 boxes seized with an ability to photocopy any business records in the 172 boxes that were seized. . . . I would also seek the return of the computers.").  As a result of those discussions, OAG agreed to, and did, copy and return to Mirka the original hard computer drives and copies of the compact discs that were seized pursuant to the search warrants.  (Second Declaration of Assistant Attorney General Edward Ferrity, dated May 8, 2007 ("Second Ferrity Declaration"), ¶ 3.)  In addition, the paper documents seized were made available to Mirka for inspection and copying at OAG's New York City office for at least four months prior to the last court date on April 20, 2007.  (Id. at ¶ 6.)

Mirka made sporadic use of the copying facilities during that time, notwithstanding its long-term access to the documents and the copying machine.  (Id. at Ex. E.)  In order to facilitate the copying process, and at Mirka's request (id. at Ex. B), OAG agreed to allow Mirka to lease a

second photocopy machine to be placed at the document repository so that Mirka's employees could more readily photocopy the material (id. at ¶¶ 3, 4). However, on March 30, 2007, Mirka's counsel informed OAG that Mirka was no longer interested in leasing a copy machine, and intended to "copy the documents as needed." (Id. at Ex. D.)

At the April 20, 2007, conference before the Court, Mirka withdrew its request for immediate injunctive relief. However, Mirka claims that it did not withdraw its request for any form of injunctive relief but rather "sought to consolidate the request for preliminary injunctive relief with the final hearing on the request for permanent injunctive relief." (P. Opp. 16.) Mirka continues to seek both an injunction and a declaration that OAG's seizure of the documents was unconstitutional to vindicate its "right to privacy in its documents . . . which includes the right to exclude others." (P. Opp. 16.) On May 9, 2007, OAG moved to dismiss Mirka's complaint. On May 22, 2007, Mirka submitted its opposition to OAG's motion to dismiss, and cross-moved for summary judgment.

On September 21, 2007, a state grand jury returned a fifty-five count indictment charging Jacob Kagan (the president and sole shareholder of Mirka) and three others with crimes including a scheme to defraud, grand larceny, insurance fraud, falsifying business records, and money laundering. (Letter of Lee Alan Adlerson, Esq., to the Court, dated Oct. 4, 2007, and enclosed attachment).

## DISCUSSION

1. Younger Abstention

Federal courts must refrain from considering claims for injunctive relief based on constitutional challenges to ongoing state criminal proceedings. Younger, 401 U.S. at 43 (noting

the "longstanding public policy against federal court interference with state court proceedings"). Younger and its progeny "espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982); see also Hicks v. Miranda, 422 U.S. 332, 349 (1975) ("The rule in Younger v. Harris is designed to permit state courts to try state cases free from interference by federal courts . . . particularly where the party to the federal case may fully litigate his claim before the state court.") (citations and internal quotation marks omitted). Federal courts should abstain from enjoining pending state judicial proceedings in order to "allow state courts to resolve pending matters within their jurisdiction." Washington v. County of Rockland, 373 F.3d 310, 318 (2d Cir. 2004). Younger abstention is driven both by the premise that "courts of equity should not intervene where a party has an adequate remedy at law," and by the premise that "the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Cecos Int'l, Inc. v. Jorling, 895 F.2d 66, 70 (2d Cir. 1990) (citations and internal quotations omitted). Where the Younger requirements are met, the appropriate remedy is dismissal of the federal case. Gibson v. Berryhill, 411 U.S. 564, 577 (1973).

The Second Circuit has analyzed three factors in determining whether Younger abstention applies to any particular state action. Courts must "determine (1) whether there is an ongoing state proceeding; (2) whether an important state interest is involved; and (3) whether the federal plaintiff has an adequate opportunity for judicial review of his constitutional claims during or after the proceeding." University Club v. City of New York, 842 F.2d 37, 40 (2d Cir.

5

1988), quoting Christ the King Regional High School v. Culvert, 815 F.2d 219, 224 (2d Cir. 1987).

Even if all three factors point towards abstention, a federal court may still intervene in the state proceeding "if the plaintiff demonstrates bad faith, harassment or any other unusual circumstances that would call for equitable relief.'" Spargo v. New York State Judicial Comm., 351 F.3d 65, 75 n.11 (2d Cir. 2003) (citations and internal quotation marks omitted); see also Kirschner v. Klemons, 225 F.3d 227, 235-36 (2d Cir. 2000).

II. Legal Standards Applied

The documents at issue here were seized pursuant to a search warrant authorized by a New York judge during the course of a grand jury investigation. Since the seizure, an indictment has been returned against the president and sole shareholder of Mirka.

A. Ongoing State Proceeding

Under New York law, judicial authorization of a search warrant is part of a "criminal proceeding" because it "occurs in a criminal court" and "is related to a prospective . . . criminal action . . . or involves a criminal investigation." N.Y. Crim. Proc. § 1.20(18)(b); N.Y. Crim. Proc. § 690.05; see Nick v. Abrams 717 F. Supp. 1053, 1056 (S.D.N.Y. 1989) (a "pending state proceeding" for Younger abstention purposes exists "when a state attorney general executes a search warrant authorized by a judge during a criminal investigation prior to arrest or indictment."). Upon seizure of Mirka's property, OAG submitted, as required by law, a report to the issuing court with an inventory of what was seized. (First Ferrity Declaration, ¶ 5.); see also N.Y. Crim. Proc. § 690.50(5). That court, not OAG, retains ultimate custody and control over the seized property. N.Y. Crim. Proc. § 690.55(1).

Mirka argues that the Younger principles cannot mandate abstention where no criminal charges have been filed.  Some courts, including the Third Circuit, have held that Younger abstention may not operate prior to indictment.  Monaghan v. Deakins, 798 F.2d 632, 637 (3d Cir. 1986); see also Brennick v. Hynes, 471 F.Supp. 863, 867 (N.D.N.Y. 1979) (Younger abstention "does not apply to state grand jury proceedings where the target for investigation has no immediate recourse to state courts.").  However, the Supreme Court has rejected such a categorical rule.  See, e.g., Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992) (The Younger doctrine "imposes heightened requirements for an injunction to restrain . . . an about-to-be-pending state criminal action.").

Numerous courts have held that investigatory proceedings that occur pre-indictment and that are an integral part of a state criminal prosecution may constitute "ongoing state proceedings" for Younger purposes.  See, e.g., Texas Association of Business v. Earle, 388 F.3d 515, 519-21 (5th Cir. 2004) (A state grand jury proceeding in which subpoenas have been issued constitutes an 'ongoing state proceeding' such that abstention is warranted.); Craig v. Barney, 678 F.2d 1200, 1202 (4th Cir. 1982); Kaylor v. Fields, 661 F.2d 1177, 1182 (8th Cir. 1981) ("The issuance [by the Arkansas Attorney General] of the subpoenas . . . is part of a state proceeding in which the plaintiffs to this action had an opportunity to present their claims" and therefore requires Younger abstention.); J. & W. Seligman & Co. Inc. v Spitzer, No. 05 Civ. 7781, 2007 WL 2822208, at *5 (S.D.N.Y. Sep. 27, 2007) ("[T]he issuance of compulsory process . . . in criminal cases, initiates an 'ongoing' proceeding for the purposes of Younger abstention."); Law Firm of Daniel P. Foster, P.C. v. Dearie, 613 F. Supp. 278, 280 (E.D.N.Y. 1985) ("Thus, were the court to grant the relief sought, the immediate and direct effect would be

to enjoin the state court from enforcing its order to comply with the subpoena and the state from

pursuing a grand jury investigation, which is a criminal proceeding."); Notey v. Hynes, 418 F.

Supp. 1320, 1326 (E.D.N.Y. 1976) ("[W]hen a grand jury has been impaneled and is sitting and

investigating, there is a 'criminal case' and in New York a criminal proceeding.").

Search warrants are sometimes necessary to develop evidence sufficient to commence a

criminal action and are functionally connected to criminal prosecutions. Moreover, the instant

search warrant was authorized and executed during and in connection with a grand jury

investigation. It would strain logic as well as both New York and federal law to conclude that a

search warrant authorized by a New York state judge and executed during the course of an

ongoing grand jury investigation is not part of an ongoing state proceeding.[1]  In any event, as

that grand jury investigation has now resulted in an indictment against Kagan and others, state

criminal proceedings are now clearly underway.

B.      Important State Interest

The important state interests implicated by the searches at issue here are evident. First,

New York has an important state interest in "investigating and preventing fraudulent conduct."

Seligman, 2007 WL 2822208, at *6. More specifically, New York has a strong interest in

maintaining the integrity and efficiency of its no-fault insurance scheme. See, e.g., State Farm

Mutual Auto. Ins. Co. v. Mallela, 372 F.3d 500, 507 (2d Cir. 2004). Second, New York has an

---

[1] Mirka notes that OAG should have obtained the documents pursuant to subpoenas instead of search warrants, and that it is more difficult to challenge an overbroad search warrant than an overbroad subpoena. This contention does not affect the determination of whether an ongoing state proceeding exists, and Mirka's concern is more properly addressed as part of the third prong of the Younger analysis – whether there is an adequate opportunity for plaintiff to pursue the federal claim in the underlying state court proceeding.

important state interest "in supervising search warrants issued during state criminal proceedings," Nick, 717 F. Supp at 1056, as well as in maintaining the integrity and effectiveness of search warrants as a prosecutorial tool.[2] Federal intervention into the state proceedings to vet the appropriateness of a search warrant would interfere with these important state interests.

C.     Opportunity for Judicial Review

Mirka contends that it does not have an adequate opportunity for immediate judicial review in the state courts of its federal constitutional claim. New York courts, like federal courts, are reluctant to grant a party the right to recover possession of property seized during an ongoing criminal investigation. See, e.g., Matter of Marra v.Hynes, 635 N.Y.S.2d 482, 482 (2d Dept. 1995); United States v. Rayburn House Office Building, Room 2113, Washington, D.C. 20515, 497 F.3d 654, 663 (D.C. Cir. 2007).

Mirka makes much of its allegation that at the time of the filing of the lawsuit it had no "immediate" opportunity to challenge the constitutionality and validity of the searches. As an initial matter, Mirka has not demonstrated that it would have been unsuccessful in having the

---

[2] OAG asserts that it used a search warrant as opposed to a grand jury subpoena based on a concern that the records would not have been produced if "[Jacob] Kagan [the president of Mirka] and his associates had time to organize a production pursuant to subpoena." (D. Opp. 4.) OAG insists that New York has a "strong interest in not having suspects in criminal investigations dictate the tools used in the investigation." (Defendant's Memorandum of Law in Opposition to Motion for Preliminary Injunction 11-12). The premise of OAG's concern is that a person facing potential criminal action may be less than diligent in retaining and preserving documents and may even resort to obstruction of justice by destroying or altering subpoenaed records. However, there appears to be no reason why the OAG could not have served plaintiff with a grand jury subpoena seeking these documents at the same time that it executed the search warrant. By doing so, the OAG could have ensured custody of the records and largely mooted issues concerning the existence of probable cause.

issuing court modify the terms of the search warrant based on the alleged constitutional defects. See, e.g., In the Matter of Documents Seized Pursuant to a Search Warrant, 478 N.Y.S.2d 490, 493-94 (Sup. Ct. N.Y. Co. 1984) (finding that "[c]ourts retain an inherent authority to decide questions concerning an allegedly unreasonable use of their process," that "property seized pursuant to a search warrant technically remains in the custody of the court," and that "the District Attorney or property clerk possesses the property only as an officer of the court, subject to the court's direction and disposition") (citations and internal quotation marks omitted); Wise v. Henkel, 220 U.S. 556, 558 (1911) (It is "within the power of [a] court to . . . consider and decide questions arising before it concerning an alleged unreasonable exertion of authority in connection with the execution of the process of the court."). There is no suggestion that Mirka ever tried to seek relief from the court that authorized the search warrant. (First Ferrity Declaration, ¶ 12.)

In any event, abstention is appropriate not only when there is opportunity for *instantaneous* review of the allegedly unconstitutional conduct on the exact day the suit was filed, but also when there is "*adequate* opportunity for judicial review of [the] constitutional claim during *or after* the proceeding." University Club, 842 F.2d at 40, quoting Christ the King Regional High School, 815 F.2d at 224 (emphasis added). Whether there is an adequate opportunity in the state proceeding to raise a constitutional challenge depends on whether there is an adequate opportunity to pursue the federal claim in state court before the federal court has made any evaluation of the substantive merits of the dispute at issue. See, e.g., Middlesex County Ethics Comm., 457 U.S. at 437 (Where "sole issue [in the federal court litigation] has been whether abstention is appropriate [and no] proceedings have occurred on the merits," it

10

would "trivialize the principles of comity and federalism if federal courts failed to take into account that an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits in federal court."); see also Hawaii Housing Authority v. Midkiff, 467 U.S. 229, 238 (1984) (Younger abstention is required only when state proceedings are initiated "'before any proceedings of substance on the merits have taken place in federal court'"), quoting Hicks, 422 U.S. at 350. A "sensible reading" of this principle of abstention is that "'once a state criminal prosecution is filed, federal courts may not decide issues properly before the state court, unless it has already done so, and decided the issue with a substantial degree of finality.'" 17B Wright & Miller, Federal Practice and Procedure 3d § 4253 at 62 (2007), quoting Case Note, 37 Ohio St. L.J. 205, 214-15 (1976).

Here although the Court has engaged in discussions with the parties about a practical resolution to the dispute between the parties, it has not engaged in any substantive proceedings on the legal merits of Mirka's claim. At the initial conference, Mirka had the opportunity to press forward with the substantive merits of its challenge by pursuing its application for a preliminary injunction. However, Mirka forewent that opportunity in favor of trying to seek a practical accommodation by the OAG, allowing Mirka access to the records seized.[3]

_____

[3] The following colloquy illustrates that choice:

> The Court: Mr. Stavis, you can tell me after I say a few things what you
> think I should do.
> We could sit here this morning and proceed to argument of the
> merits of the motion, at which time we would discuss such things
> as the prospects for success in the litigation, which would subsume
> issues like Younger abstention and whether the search warrant is
> particular enough to satisfy the Fourth Amendment, and at the end
> of that, a decision would presumably be rendered as to whether
> you get preliminary relief, anyway. And I suppose the third issue

Those requests were substantially accommodated by OAG. Over a period of several

months, OAG made extended efforts to restore copies of all seized records to Mirka. (First

Ferrity Declaration, ¶¶ 10-12; Second Ferrity Declaration, ¶¶ 3-4, 6.) The Court regularly

conferred with the parties, to assure that OAG was complying with its representations and

making all records that Mirka wanted available for copying. Neither party indicated any special

interest in the original documents or discs. Rather, both sought access primarily to the

information contained therein – Mirka so as to continue doing business, OAG to further its

investigation.[4]

Mirka has not attempted to dispute OAG's attestation that it continued to make the

documents available for a period of months, and that Mirka made only the most desultory efforts

to copy the materials or retrieve its information.[5] Eventually, however, on April 20, 2007, Mirka

---

> would be . . . irreparable injury . . .
> Or, you could explore the logistics of what they seem to be
> offering today with your motion still hanging over their heads . . .
> maybe the motion is of more use to you pending than it is decided.
> So we could adjourn this until after the holidays and see whether
> there's anything left to fight about.
> Mr. Stavis [Counsel for Mirka]: . . . We're of a mind to pursue
> those discussions, so long as . . . in case the discussions break
> down and we're not obtaining voluntarily the relief we sought in
> the lawsuit [we can argue the merits].

12/21/06 Tr. at 19.

[4] Mirka did indicate a need for the computer hardware that had been seized. This interest
was also accommodated by OAG.

[5] Defendant supports these contentions with evidence and sworn declarations. (First
Ferrity Declaration, ¶¶ 10-12; Second Ferrity Declaration, ¶¶ 3-6, Exs. D, E.) In contrast, Mirka
submits no affidavits or other evidence to contest either that they were given access to the
documents or that they made little use of that access. In an effort to explain their sporadic efforts
to access the documents, they suggest, in unsworn pleadings, that "the 'access' provided by
Defendant . . . effectively put Plaintiff out of business." (P. Opp. 17.) Mirka's comments might

12

announced that it had changed course and wished to pursue the litigation. The Court then set a

schedule for briefing the instant motions.

In the meantime, a grand jury has returned an indictment against Kagan, and the

constitutionality of the search warrant will not doubt be raised in due course during the criminal

proceeding. Kagan, the president and sole shareholder of Mirka, will have an adequate

opportunity to vindicate his own and his company's constitutional rights through a motion to

suppress the evidence in the criminal prosecution. N.Y. Crim. Proc. § 710.20(1).[6] That New

York law may provide procedures different from those available under federal law to vindicate

the same rights does not avoid abstention. See, e.g., Kirschner, 225 F.3d at 235 (Younger

principles "presuppose[] that the plaintiff be able to interpose his federal defense against a

criminal or regulatory proceeding in the state court" and do "not require that all the procedures

for the interposition of the federal defense be as advantageous in the state court as in the federal

action."). Currently, a state forum exists where the constitutionality of the search warrants and

the searches may be addressed in due course.

This state court remedy would be entirely adequate to vindicate any rights Mirka seeks to

assert in this action. Mirka does not seek damages for any constitutional injury or business

___

have had more weight in the Court's equitable analysis had OAG not provided Mirka with
precisely the relief that Mirka requested from it.

[6] Even should the case against Kagan be somehow stalled or derailed, Mirka would not
necessarily be without a state remedy. If the investigation failed to result in an indictment in a
reasonable time, at some point it would apparently be able to file a writ of prohibition in an
Article 78 proceeding. See Matter of B.T. Productions v. Barr, 44 N.Y.2d 226, 233 (1978);
Nick, 717 F. Supp. at 1057 ("If plaintiff[] believe[s] the Attorney General's office's pre-
indictment investigation is unduly prolonged, they remain free to challenge the prosecutors'
conduct in an Article 78 hearing.").

disruption it may have suffered. Rather, it seeks only equitable remedies: a declaration of the

illegality of the search and a return of its property. Both interests would be fully vindicated if

the evidence were suppressed. Mirka has had since December 2006, and continues to have, full

access to the information contained in its documents. In effect, the only interest Mirka has not

already vindicated in this action is its ability to deny OAG access to the documents and their

contents by securing their return. In other words, the relief Mirka seeks is effectively the

prohibition of the use of the materials as evidence in the investigation and prosecution of itself

and Kagan. This is precisely the remedy that is now available in the state prosecution, and is

best left to litigation in the state courts.

D.     Equitable Considerations

Thus, all three Younger factors favor abstention. Moreover, Mirka has made no credible

claim that the allegedly unconstitutional conduct was the product of "bad faith, harassment or

any other unusual circumstances that would call for equitable relief." Spargo, 351 F.3d at 75

n.11 (citations and internal quotation marks omitted). In contrast, the equities also strongly favor

abstention, as Mirka has demonstrated no need for equity to intervene.

OAG has strong and legitimate interests in gathering and analyzing evidence for a

potential criminal prosecution. Of course, Mirka may have economic or other practical interests

in accessing the seized documents. However, to the extent that OAG's evidentiary needs

conflict with Mirka's economic and practical needs, Mirka's interests have been substantially

accommodated by OAG. OAG (i) returned the computer hardware and software that was seized

and (ii) was and remains willing and able to assist plaintiff in photocopying any and all paper

documents needed by Mirka. Mirka thus has not been denied access to the seized documents,

and mere inconvenience does not rise to a level that counsels equitable relief. A "party can rarely, if ever, demonstrate that the seizure of business records or documents caused irreparable harm if the government either makes copies available or retains copies and returns the originals." In re Search Warrant Executed February 1, 1995, No. M 18-65, 1995 WL 406276, at *2 (S.D.N.Y. July 7, 1995). Mirka's actions in this case demonstrate the complete lack of the need for equity to intervene – its only sporadic use of the copying facilities followed by its discontinuance of any copying at all undermines the persuasiveness of Mirka's contention that OAG has prevented it from accessing the documents.

Plaintiff's only possible remaining interest is its claimed "right to exclude others" from the documents. (P. Opp. 19.) However, since plaintiff concedes that "the Defendant could have utilized a grand jury subpoena to secure the business records sought" (P. Opp. 2), it is far from clear that plaintiff has a legitimate interest in the privacy of the documents in OAG's possession. Furthermore, Mirka's alleged "right to exclude others" must be evaluated in light of the fact that plaintiff is a corporate entity operating in a highly regulated industry. See, e.g., G.M.. Leasing Corp. v. United States, 429 U.S. 338, 353 (1977) ("[A] business, by its special nature and voluntary existence, may open itself to intrusions that would not be permissible in a purely private context," and when a corporation chooses to engage in a "pervasively regulated business and to accept a federal license" its business records may be "subject to effective inspection.").

Being the subject of a criminal investigation may bring added costs and inconveniences to Mirka. However, mere cost and inconvenience does not constitute irreparable injury. See, e.g., Kugler v. Helfant, 421 U.S. 117, 124 (1975) ("[T]he cost, anxiety, and inconvenience of

having to defend against a single criminal prosecution alone do not constituted 'irreparable injury' in the 'special legal sense of that term.'"), quoting Younger, 401 U.S. at 46.

Mirka suggests that it is constitutionally entitled to a remedy analogous to that provided under Federal Rule of Criminal Procedure 41(g), which allows a person aggrieved by an unlawful search and seizure to move for the property's return. However, it far from clear that Mirka would be successful in a Rule 41(g) proceeding, even if it could bring one. If the state "has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable" and a motion to return the property pursuant to Rule 41(g) will be denied. Rayburn House Office Building, 497 F.3d at 663, quoting 1989 Advisory Committee Notes to Rule 41(e), predecessor to Rule 41(g); id. at 664 ("Although the search of [the] paper files violated the [Constitution], [the plaintiff's] argument does not support granting the relief that he seeks, namely the return of all seized documents, including copies, whether privileged or not."). Moreover, the "denial of a Rule 41(e) motion [the predecessor to Rule 41(g)] is not appealable when the party moving for return of the seized property is the subject of an ongoing grand jury investigation." United States Postal Serv. v. C.E.C. Servs., 869 F.2d 184, 186 (2d Cir. 1989). Furthermore, even when there is no criminal proceeding currently pending, the "motion for return of property [pursuant to Rule 41(g) is treated as] a civil action in equity." United States v. Machado, 465 F.3d 1301, 1307 (11th Cir. 2006). The materials that Mirka seeks to prevent OAG from accessing are being held in connection with an ongoing criminal investigation, where there is no evidence that the investigation is proceeding in bad faith, where the search warrant was issued by a neutral judge, where the subjects of the investigation have full access to those materials, and where an indictment has been returned against plaintiff's

16

president and sole shareholder such that the legality of the search will likely soon be adjudicated in the underlying criminal proceeding.

At this point, the remedies this lawsuit continues to seek are (1) a declaration by this Court of the unconstitutionality of the search and (2) an injunction excluding the OAG from access to evidence relevant to an ongoing criminal investigation. These remedies would interfere with the ongoing state criminal proceeding by preempting the state court's ability to adjudicate the matter in the context of a suppression motion. In these circumstances, it would be inappropriate for this Court to inject itself into a state criminal proceeding and to derail a state criminal prosecution by effectively deciding a motion to suppress the evidence, especially where such a suppression motion is likely to come before a New York State judge in the near future. See, e.g., Barr v. Abrams, 641 F. Supp. 547, 554 (S.D.N.Y. 1986) (Leval, J.) ("Federal courts cannot permit the civil rights action to be used as a combative defense against a state criminal prosecutor's conduct of an investigation.").

## CONCLUSION

For the reasons set forth above, Younger and its progeny mandate abstention, and this Court will refrain from deciding the merits of plaintiff's motion for injunctive and declaratory relief. Defendant's motion to dismiss is granted, and plaintiff's cross motion for summary judgment is denied.

SO ORDERED.

Dated: New York, New York
       November 27, 2007

_____
GERARD E. LYNCH
United States District Judge

17